Reese, J.
delivered the opinion of the court.
The first question of importance which the record presents, is upon the alleged gift of Asahel Brunson,- the elder, to Jesse A.- Brunson, of the bonds and notes, for the benefit of himself, and his two surviving brothers. And upon this question two considerations arise. 1. Was the gift in fact made? 2. Did the delivery of the bonds and notes give to the donation-validity in point of law?
1. As to the matter of fact we think that no doubt can well exist. The answer of Jesse A. Brunson, in effect admits the gift, although with some doubt and qualification. The conduct of Jesse A, Brunson strongly proves it, by bringing- *642 suit in the life time of the father upon one of the bonds, for his own use, by giving up one of the notes, and taking a new one payable to himself; by paying over to each of his brothers a portion of the proceeds of the notes during the life of the father, and especially by omitting all mention of the notes in the inventory returned by him as executor.
But the gift is abundantly proved by the statements of Jesse A. Brunson to various witnesses, both before and after the death of the father, and also by the declarations of the father in his life time, to several persons. It is well established as a fact, therefore, that Asahel Brunson, in his life time, gave the notes and bonds in question to Jesse A. Brunson, to be collected by him for the joint benefit of himself and his two brothers.
2. It remains for us to enquire whether the gift and delivery of the notes and bonds operates to vest a property in the money secured by them, and is a valid donation, inter vivos.?
Upon this subject, in England and America, there have been some fluctuation and conflict of decision, arising almost' exclusively in questions of donations mortis causa. One thing with regard -to the matter was conclusively settled in England so early as the time of Lord Hardwicke; namely, that 'there might be a valid donation mortis causa, of a bond,' by delivery. But it was then decided that this was not the ease with regard to promissory notes and bills of exchange. It is not necessary to detail the reasoning of Lord Hardwicke, as to the grounds upon which the distinction proceeded. However satisfactory at the time, it became less and less so as the negotiability of notes increased, and as they became more and more nearly assimilated to money itself. Perhaps the distinction which now appears shadowy and merely technical, arose, in fact, from an anxiety to limit the number of cases, as much as possible, of donations mortis causa, because of the great danger of fraud and perjury in those cases.
In the case of Rankin vs. Wegnelin, at the Rolls, so late as 1832, where a husband in contemplation of death, delivered certain bills of exchange payable to his order, to his wife, saying, “take these for your own use and benefit,” and he died within a fortnight of the delivery of the bills, without *643 endorsing them, and the executor took them from the wife, and collected the money; the question was, whether they were subjects of a donatio mortis causa? and it was urged that a chose in action could not be so given.' The Master of the Rolls said the contrary doctrine h?d been well established since the time of Lord Iiardwicke’s opposite decision; and he held that the executors were trustees for the wife, and he relied on 1 Bligh’s Rep., New Series, 497; 1 Dow’s Rep. N. S. 1; Chitty on Bills 3, note (i), 8 Ed. So also, in this country, in the case of Constant vs. Schuyler, 1 Paige’s Rep. 318, the Chancellor of New York held that the promissory note of a third person, is the proper subject of a gift causa mortis. And referring to the distinction of Lord Hardwicke, he says, “Notwithstanding the attempts which, have'been made in England to distinguish between a promissory note and a bond, in relation to the validity of a gift of a chdse in action, there cannot, in reason, be any difference. A gift of either is valid as a symbolical delivery of the debt on the note or .bond, and all the delivery of which the subject is capable'.
Without mnltiplying references to authorities on either side •of the Atlantic, we may conclude that the law now is, that these dioses in action constitute a proper subject of valid donation in view of death; and a fortiori of valid donations inter vivos.
3. There being three children, and the descendants of another in the present case, and one of the three having been so fully advanced in the life time of the intestate, as that he chooses not to come into account and contribution with the other children, the question arises, whether the widow is entitled to a fifth, or to a fourth of the personal estate; or, in other words, whether she has a right to insist that the advancements to the children shall be brought into contribution?
It is conceded that the widow in England has no such right under their statute of distributions, nor in this state, by the provisions of the acts of 1715 and 1766. But it is said to result here from the purview of the statute 1784, c. 22, § 8. The question is for the first time to be decided in this state, and there is but one decision in the state of North Carolina, *644 Upon the question, which was made by a portion of the court called the court of Conference, in the year 1801, Duke vs. Duke, Conf. Rep. 361. As that decision is one way, and the uniform action of our courts and our community is known to have been, for half a century, another way, we shall, for the present, consider the question as an open question.
And at the threshold, the consideration presents itself, that the doctrine of collation and contribution of advancements, in lands or in personalty, as among the children themselves, is of statutory creation; it is founded, as to personalty, upon the statute of 1766. The widow., it is conceded, is not, by the provisions pf the statute, included within the scope of that principle. As to lands, it is founded upon the very statute in question, 1784, c. 22, and its operation is limited to children. If the widow have this right, therefore, it is not expressly and in terms given as it is to the children in both the instances referred to, but arises from construction and implication.
That a principle so peculiar in its character, and so pervading in its operation, and created in other instances by terms so full and explicit, should have been intentionally applied to the widow by words which create only an implication, it is difficult to believe.
The principle of contribution among the children is equality. This is pot in all instances attainable, may be, and generally will be approximated. But the widow stands upon grounds peculiar and isolated — in some respects better than that occupied by the children, in some respects worse. For instance, in case of intestacy,: — if there be no children, she gets only one-third of the estate; the balance would go even to distant relations o;f the husband. But if there be no wife, the child or children get all in case of intestacy. On the other hand, the children may be disinherited, they cannot claim against the will of the father. But the wife can claim against the will of the husband, and can compel the legatees, be they children or strangers, to contribute, pro rata, till her third or her child’s part be made up. The husband may, by will, give his whole real and personal estate to the wife; the children ¡cannot object; but if he devises it to them, his wife can ob *645 ject to the extent and effect in the statute under consideration, mentioned.
These remarks are made to show, that the attitude and rights of the wife, and of the children, are so distinct and different under the statute, and, in general, that equality, as between them, cannot be said to have constituted the leading object of the statute. Thus, if the husband die leaving one child, that child shall have, in case of intestacy, two-thirds of ,the personal estate; the wife shall have one-third. The child .so taking two-thirds may have been largely advanced. Yet it is conceded in the argument that this is not a case for contribution. The widow takes her one-third and no more. Again, if there be two children, they and the widow severally take a third; but these two children may have been largely advanced in the life of the father; yet here again it is conceded, that there is no just claim for contribution.
The wife is still entitled to her third of the personal estate at the time of the death.
But, says the statute, “If the husband shall die, leaving more than two children, then and in that case, such widow shall' share equally with all the children, she being entitled to a child’s part.” Here, for the first time, it is insisted, comes forward the principle of contribution, by force of the words, “share equally" and “child’s part.”
If there be no child she gets but a third; if there be one child, and he largely advanced, still she gets but her third; if there be two children, and they be largely advanced, still she gets but her third; but if there be three children, and they largely .advanced, then by the argument, she may get by, the principle of contribution, which here first arises, the whole personal estate; whereas the leading ohject .of the provision seems to have been, that as the number of children increased, her interest should diminish, one-third being deemed top much where there, might be three or more .children.
That the phrase, “child’s part,” means only the aliquot portion of the wife according to the number .of the children, may be proved in this manner. There are two cases put in this eighth section, where the wife can claim her:third, or her .child’s part, according to circumstances,. :One is, where the *646 husband dies intestate. That case we have considered. The other is, where he makes a will, but does not make her an adequate allowance, and she dissents. Suppose, in the latter case, the husband by his will, should make but a slight provision, or none at all, for his three children, and should bequeath the bulk of his personal property to collateral relatives, or to strangers, and the wife having dissented, should file her bill. To what would she be entitled? To a child’s part, says the statute; and in the case supposed, there are three children, what would be her child’s part? Why the legatees, who are strangers, would insist that she should have an actual child’s part; that she should share equally with them, using her present argument. But she would reply, that as there were three children, she was entitled to one-fourth part of the personal estate; and we think she would reply correctly.
That we place the proper construction upon the eighth section of the act of 1784, c. 22, we think is made manifest by the provisions of the ninth section. That section having described the mode in which the widow shall sue for, and have assigned to her her dower, provides that the sheriff and jury, spoken off before, “shall also, allot and set off to such widow, such part or portion of the personal estate of which her husband, died possessed, and to which, by this law, she shall be entitled; which part or portion shall be and enure to such widow,” &c. This shows that the corpus of the estate, put of which she could claim her share, was the personal .estate of which her husband died possessed. And the nature and character of the tribunal to whom the duty was assigned of making the allotment, excludes the idea that it could be any part of their province to take an account of advancements.
As to the decision in the conference court of North Carolina, it seems to have been the only one which has been made in either state upon the question. It is, indeed, incidentally referred to in a recent case in N. Carolina, t Dev. and Batt. 329,330, without disapprobation.. The case itself seems not to have been very fully investigated or considered. If, how-ev.ep, our courts and our community had adopted and acted upop its authority, we should have hesitated at the time to have laid dpwn a different rule. But as so far from adopting *647 and acting on the rule laid' down in that case, we know that the practical rule has been different, and conformable to the views set forth in this opinion, we are not disposed, by yielding to its authority, to change a practice under the statute, which we deem correct:
Upon these points, therefore, we affirm the decree.